```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF SOUTH DAKOTA
                        SOUTHERN DIVISION
******************************************************************************
                                          *
FLANDREAU SANTEE SIOUX TRIBE,             *
a federally-recognized Indian Tribe,      *    CIV 14-4171
                                          *
         Plaintiff,                       *
                                          *
   vs.                                    *    MEMORANDUM OPINION AND
                                          *    ORDER ON THE TRIBE'S MOTION
ANDY GERLACH, Secretary of the State of   *    TO ALTER OR AMEND THE
South Dakota Department of Revenue; and   *    JUDGMENT
DENNIS DAUGAARD, Governor of the State    *
of South Dakota,                          *
                                          *
         Defendants.                      *
                                          *
******************************************************************************
```

## BACKGROUND

Pending before the Court is the Tribe's Motion to Alter or Amend the Judgment pursuant to Fed R. Civ. P. 59(e), Doc. 159, filed on November 15, 2017. The Tribe asks the Court to amend its Judgment, Doc. 158, entered on October 20, 2017, in order to correct a factual error. According to the Tribe, "[p]ortions of the Judgment fail to recognize that, pursuant to the Deposit Agreement, the escrow account does not contain any deposits originating from the First American Mart (the Mart)." The escrow account is composed of disputed taxes deposited by the Tribe from January 1994 through July 1998. The Tribe asserts that "[t]he Deposit Agreement was concerned with sales and use taxes only at the Tribe's Royal River Casino (the Casino), and the Mart was not conveyed to the Casino until 2005."

The Deposit Agreement was entered into in 1994 and required the Tribe to pay a disputed tax amount into an escrow account pending the final resolution of a federal action pending in South Dakota District Court at that time. Specifically, the Deposit Agreement required the Tribe, on a monthly basis, to deposit into an escrow account the tax from the "sales to non-members of food, beverages and other tangible personal property . . . at the Tribe's casino." Recital F of the Deposit Agreement states that the Tribe was to deposit "the aggregate amount of any disputed tax liability prior to a final resolution of [*Sisseton-Wahpeton v. South Dakota*]." That lawsuit was

1

dismissed by stipulation in 1998 and it was around that time that the Tribe stopped making payments into the escrow account.

The State does not dispute that from January 1994 to July 1998, the funds held in escrow did not include taxes on transactions of non-members at the Mart because the Tribe did not treat the Mart as part of the Tribe's casino and therefore did not view the Mart as encompassed by the Deposit Agreement. Nevertheless, the State contends that, even if the Court misunderstood the composition of the escrow account and perceived the account as including taxes from transactions with non-members at the Mart, "such misperception does not affect the accuracy of the Court's Judgment."

The Tribe moves this Court to amend the fourth and sixth paragraphs of the Judgment "to remove any implication that the escrow fund contains, or should contain, taxes arising from nonmember sales at the Mart, and to delete the reference to the State receiving any 'credit' for the taxes attributable to nonmember sales at the Mart 'during the time from when the Tribe stopped paying that amount into escrow to the present.'" The applicable paragraphs are as follows, with the contested language emphasized:

> 4. ... [T]he escrow agent may now, subject to any stay granted pursuant to an appeal:
>> a. Pay the funds held in escrow to the Tribe which represent the use tax imposed on nonmembers' use of purchased goods and services as to the Casino's slots, table games, food and beverage services, hotel, RV park, live entertainment events, and gift shop; and
>> b. *Pay the funds held in escrow to the State which represent the use tax imposed on nonmembers' use of goods and services purchased at the First American Mart.*
>
> ...
>
> 6. Defendants shall recover nothing in their counterclaim, and judgment on the merits on all claims for relief therein *except that the State must receive credit against the funds in the escrow account for the reasonably estimated amount of the additional state tax that would have accrued at the First American Mart for sales to non-members during the time from when the Tribe stopped paying that amount into escrow to the present.*

## ANALYSIS

Fed. R. Civ. P. 59(e) clarifies that the district court has power to correct its own mistakes in the time period immediately following entry of judgment. *Innovative Home Health Care, Inc. v. P.T.-O.T. Assoc. of the Black Hills*, 141 F.3d 1284, 1286 (8th Cir. 1998). District Courts have broad discretion in determining whether to grant a motion to alter or amend a judgment under

2

Rule 59(e) and will only be reversed on appeal for abuse of discretion. *Chapman v. Hiland Partners GP Holdings, LLC*, 862 F.3d 1103, 1110 (8th Cir. 2017). "An abuse of discretion will only be found if the district court's judgment was based on clearly erroneous findings or erroneous legal conclusions." *Innovative Home Health Care*, 141 F.3d at 1286 (quoting *Perkins v. U.S. West Communications*, 138 F.3d 336, 340 (8th Cir. 1998)), *see also Villegas v. Princeton Farms, Inc.*, 893 F.2d 919 (7th Cir. 1990) (finding abuse of discretion in granting a motion to alter or amend where the district judge "cited no errors or changes of heart regarding the merits of the legal arguments").

Rule 59(e) motions serve a limited function and may only be used to correct "manifest errors of law or fact or to present newly discovered evidence." *Hagerman v. Yukon Energy Corp.*, 839 F.2d 407, 413, *cert denied*, 488 U.S. 820, 109 S.Ct. 63, 102 (1988). "Such motions cannot be used to introduce new evidence, tender new legal theories, or raise arguments which could have been offered or raised prior to entry of judgment." *Innovative Home Health Care*, 141 F.3d at 1286 (citing *Hagerman*, 839 F.2d at 414). "[Rule 59(e)] motions are to be granted sparingly because of the judicial interest in finality and the conservation of scare judicial resources." *Ellis v. Minneapolis*, Civil No. 12-57 ADM/SER, 2012 WL4449850, at *1 (D. Minn. Sept. 26, 2012). Indeed, "[t]he fact that the court made a mistake is not, by itself, enough to warrant granting [a Rule 59(e)] motion. *Norman v. Arkansas Dept. of Educ.*, 79 F.3d 748, 750 (8th Cir. 1996). Instead, relief under Rule 59(e) "is generally available only when a manifest error affects the correctness of the judgment." *Id.* (quoting *Seshachalam v. Creighton Univ. Sch. Of Medicine*, 545 F.2d 1147, 1147 (8th Cir. 1976) (per curium), *cert denied*, 433 U.S. 909 (1977).

Upon examination of the record, the only reference to when the Mart was acquired as part of the Casino can be found in paragraph 37 of the Amended Complaint, Doc. 32, which states "[t]he Tribe transferred the mart's assets to the Casino Complex in 2005." The State has never contested this fact[1] and its response to the Tribe's current motion accepts this fact as true.[2] However, "[a] verified complaint is the equivalent of an affidavit for summary-judgment

---

[1] The State's Answer, Doc. 34, stated in response, "The State is without sufficient knowledge to admit or deny the statements in paragraph 37."

[2] The State's Brief in Opposition to Flandreau Santee Sioux Tribe's Motion to Alter or Amend the Judgment states "The Tribe argues—and the State currently does not refute—that from January 1994 to July 1998, the funds held in escrow did not include the taxes on transactions involving non-members at the First American Mart. During that time frame, the Tribe did not treat the Mart as part of the Tribe's casino and therefore viewed the Mart as not encompassed by the Deposit Agreement." Doc. 167, p. 3 (internal citations omitted).

3

purposes" because all justifiable inferences are drawn in the plaintiff's favor. *See Munz v. Michael*, 28 F.3d 795, 798 (8th Cir. 1994) (quoting *Williams v. Adams*, 935 F.2d 960, 961 (8th Cir. 1991). Therefore, allegations in the verified complaint "are evidence to the same extent as statements in a sworn affidavit." *See id.* at 799.

### Paragraph 4

Paragraph 4.b grants that the escrow agent may now pay to the State the funds held in escrow which "represent the use tax imposed on nonmembers' use of goods and services purchased at the First American Mart." The Tribe asserts that no funds in the escrow account represent use taxes imposed on nonmember purchases at the Mart because the funds in the escrow account are composed of taxes imposed on nonmember purchases at the Casino from 1994 to 1998, and the Mart was not part of the Casino until 2005. Therefore, the Tribe argues, because there are no funds in the escrow account which represent use taxes imposed on nonmember purchases at the Mart, it is incorrect and confusing to include paragraph 4.b in the judgment. The State does not argue that there are any funds in the escrow account that represent use taxes imposed on nonmember purchases at the Mart. Instead, the State asserts that it is unnecessary to amend the judgment because it can be complied with as is and the escrow agent will simply not pay any funds to the State.

### Paragraph 6

Paragraph 6 grants the State a credit against the funds in the escrow account for the "reasonably estimated amount of the additional state tax that would have accrued at the First American Mart for sales to nonmembers during the time from when the Tribe stopped paying that amount into escrow to the present." The Tribe's reasons for amending this paragraph can essentially be broken down into three arguments: 1) the paragraph is counterfactual—the Tribe did not stop paying into the account any amounts that represent purchases of nonmembers at the Mart because they never started; 2) allowing the State to receive escrowed Casino taxes as payment for taxes arising at the Mart is contrary to the Deposit Agreement and would therefore be inequitable; and 3) sovereign immunity bars awarding the State a portion of the escrow account as a credit against historical taxes due that were not within the scope of the Deposit Agreement.

The Deposit Agreement required the Tribe, on a monthly basis, to deposit into an escrow account the tax from the "sales to non-members of food, beverages and other tangible personal property . . . at the Tribe's casino." Further, the deposit was to be of "any disputed tax liability

4

prior to a final resolution" of the *Sisseton-Wahpeton v. South Dakota* case, which was dismissed by stipulation in 1998. It is indeed counterfactual to suggest the Tribe stopped paying into the escrow account any disputed taxes on nonmember purchases at the Mart because the Tribe never paid any disputed taxes on such purposes into the escrow account. The Tribe never did so because the Mart was not encompassed by the Deposit Agreement as it was not acquired by "the Tribe's casino" until 2005, well after the Tribe stopped paying into the escrow account in 1998. It is also true, then, that because the Deposit Agreement did not encompass the Mart and because the deposit into the escrow account was to be composed of any disputed tax liability *prior to* a final resolution of the *Sisseton-Wahpeton v. South Dakota* case, it cannot be said that the Tribe was ever required to pay into the escrow account any disputed taxes on nonmember purchases at the Mart. The Tribe's liability for any unpaid use taxes on nonmember purchases at the Mart is wholly distinct from anything encompassed by the Deposit Agreement. Therefore, the Court must grant the Tribe's Motion to Alter or Amend the Judgment to correct this factual error for the same reasons why it was compelled to dismiss the State's counterclaim.

In this case, the State added a counterclaim asking the Court to order the Tribe to "deposit the required sum, pursuant to the Deposit Agreement, from the date the Tribe stopped depositing such sum in the escrow account to the date the funds in the escrow account are disbursed," and asked that the escrow agent be ordered to disburse the contents of the escrow account to the State. Defendants' Answer to First Amended Complaint, Doc. 34, at 19. The Court dismissed the State's counterclaim, however, as barred by the Tribe's sovereign immunity. "It is well established that Indian tribes possess the common law immunity from suit traditionally enjoyed by sovereign powers." *Rosebud Sioux Tribe v. Val-U Const. Co.*, 50 F.3d 560, 562 (8th Cir. 1995) (citing *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978)). Tribal immunity may be waived by an unequivocal expression of Congress to do so or by an equally clear waiver by the Tribe. *See C & L Enterprises, Inc. v. Citizen Band Potowatomi Indian Tribe*, 532 U.S. 411, 418 (2001).

Merely filing an action as a plaintiff does not waive sovereign immunity as to "claims which do not meet the same transaction or occurrence test nor to claims of a different form or nature than that sought by it as plaintiff nor to claims exceeding in amount sought by it as plaintiff." *Jicarilla Apache Tribe v. Andrus*, 687 F.2d 1324, 1344 (10th Cir. 1982) (quoting *Federick v. U.S.*, 386 F.2d 481, 488 (5th Cir. 1967)). Instead, as this Court explained in its

Memorandum Opinion and Order on Plaintiff's Motion for Judgment on the Pleadings, Doc. 60, at 7, when a Tribe files an action, it is immune from the defendant's counterclaims "except for [counterclaims grounded] in recoupment[.]" *Val-U Const.*, 50 F.3d at 562 (citing *Rosebud Sioux Tribe v. A & P Steel, Inc.*, 874 F.2d 550, 552 (8th Cir. 1989)).

"Recoupment is a defensive action that operates to diminish the plaintiff's recovery rather than to assert affirmative relief." *Val-U Const.*, 50 F.3d at 562 (citing Andrus, 687 F.2d at 1344). "Claims in recoupment arise out of the same transaction or occurrence, seek the same kind of relief as the plaintiff, and do not seek an amount in excess of that sought by the plaintiff." *Berrey v. Asarco, Inc.*, 439 F.3d 636, 643 (10th Cir. 2006) (citing *FDIC v. Husley*, 22 F.3d 1472, 1487 (10th Cir. 1994)). Because the State's counterclaim sought monetary relief from the Tribe that in no way was meant to offset a claim for relief contained in the Tribe's Complaint, the State's counterclaim seeking further payments into the escrow account from the Tribe was not an action in recoupment and was therefore barred by sovereign immunity. Doc. 60, at 8. Here, the Tribe asserts that requiring the Tribe to relinquish money from the escrow account to the State in the form of a credit is no different from granting "monetary relief in the form of further payments into the escrow account" because the credit would compensate the State for an "utterly distinct tax liability." Doc. 169, at 3–4. The Court agrees.

If the escrow account did contain disputed use taxes arising at the Mart or even was supposed to contain such disputed taxes as required by the Deposit Agreement, the Court would be within its power to declare that the State receive credit for such taxes, as the funds would satisfy the same transaction or occurrence test required for actions in recoupment. As that assumption is factually incorrect, and any money owed for unpaid taxes on nonmember purchases at the Mart is an entirely distinct liability from that contracted about in the Deposit Agreement, the Tribe's sovereign immunity prevents the Court from making such a declaration. Accordingly,

    IT IS ORDERED:

    (1) That the Tribe's Motion to Alter or Amend the Judgment, Doc. 159, is GRANTED.

    (2) The Court will enter an amended judgment which alters paragraphs 4 and 6 of the Judgment, Doc. 158, to read:

        4. In accordance with the Parties' Deposit Agreement, the escrow agent may now, subject to any stay granted pursuant to an appeal, disburse to the Tribe the funds held

in escrow which represent the use tax imposed on nonmembers' use of purchased goods and services as to the Casino's slots, table games, food and beverage services, hotel, RV park, live entertainment events, and gift shop.

…

6. Defendants shall recover nothing on their counterclaim, and the Court grants judgment on the merits on all claims for relief therein in favor of the Tribe.

Dated this 5th day of February, 2018.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THELEN, Clerk of Courts

By _____,
Deputy
(SEAL)